Filed 12/18/13  P. v. Tenorio CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>WILFREDO L. TENORIO,<br><br>    Defendant and Appellant. | B244478<br><br>(Los Angeles County<br>Super. Ct. No. KA095990) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Geanene M. Yriarte, Judge.  Modified, and as modified, affirmed.

Edward H. Schulman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr. and Daniel C. Chang, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

A jury found defendant and appellant Wilfredo L. Tenorio guilty of assault with intent to commit a felony and of sexual battery. At his trial, fresh complaint evidence was admitted, but the trial court denied defendant's request for a limiting instruction. We hold that any error in failing to give such an instruction was harmless. We modify the judgment, however, to correct a sentencing error with respect to the fines imposed under Penal Code sections 1202.4 and 1202.45.[1] We affirm the judgment as modified.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.     Factual background.

On July 28, 2011, Lilly, who was then 20 years old, lived at home with her parents; sister Sharon;[2] defendant, Sharon's husband; and Sharon's and defendant's one-year-old son. Although defendant and Lilly lived in the same house, she rarely saw him because she worked and went to school.

But around noon on July 28, 2011, only defendant and Lilly were at home. At some point, she called her boyfriend, Pablo, and asked him to have a friend come over. Lilly was in her bedroom when defendant, wearing only a towel, said he needed to talk to her because she had been a "naughty girl." His son had found Lilly's vibrator and cell phone containing inappropriate pictures of Lilly. Defendant grabbed Lilly's vibrator from a drawer in her bedroom, which surprised her because she didn't know that he knew where she kept it.

Defendant said that Lilly had matured since the time he met her, when she was 13. Uncomfortable, Lilly tried to avoid the conversation and went into the kitchen. He followed, staring at her. She went back and forth from the garage to the kitchen, pretending to be busy with cooking and cleaning, but he kept standing next to her, watching. When she went to her bedroom, he followed her. Cupping her breast with his hand, defendant said he knew that she wore the things she did for him.

---

[1]     All further undesignated statutory references are to the Penal Code.
[2]     Because we refer to the victim by her first name, we refer to witnesses by their first names for consistency.

Lilly backed away, but he grabbed her and tried to kiss her. She resisted, but he pushed her into his room and onto the bed. Now naked, defendant got on top of Lilly and tried to kiss her. Although Lilly told him to stop and that this wasn't going to happen, he grabbed her hands and held them above her head. He kissed her. Moving his body up to her face, he said he would leave her alone if she kissed his penis. He lifted her pajama shirt and licked, bit, and sucked her breasts.

Lilly got away and ran outside. Her boyfriend's friend, Tony, had just arrived. She told Tony to call her boyfriend and tell him to come to the house or call her because defendant had tried to rape her. For five minutes, she stayed outside, but then she went back inside and grabbed her scrubs. Defendant asked her to promise not to tell anyone what happened. He asked her to shake hands, but when she refused, he said it was her fault for attracting him and not wearing a bra with her pajamas. She left.

Lilly called her boyfriend and mother and told them what happened. Her mother said they had to tell Sharon. The three women decided that Lilly should call the police, although Sharon wanted to wait until the next day. That night, at Sharon's request, Lilly met defendant and Sharon, and Lilly repeated her story in front of defendant. Sharon asked defendant if he knew that what he did was considered rape and he could go to jail, and he answered, yes. The next day, July 29, Lilly reported the incident to the police.

Ramos, Lilly's boyfriend, testified that on July 28, 2011, Tony texted him to say that Lilly was scared and crying. Crying and hysterical, Lilly called Ramos and said that defendant tried to rape her.

Detective Jason Convento from the West Covina Police Department talked to defendant on July 31, 2011. Defendant admitted talking to Lilly about not leaving her vibrator where his son could get it. He denied touching her or that she ever touched him.

During a second interview on August 5, 2011, defendant said he wanted to tell the truth. After he told Lilly about her vibrator, she said he was funny and started to laugh. She stood in front of him and rubbed her chest against his, asking whether she was provoking him. He held her waist, but then he let her go and she went to her room. He followed her and grabbed the vibrator and told her to put it away. She started to laugh, so

3

he held her.  They sat on the bed, and when she lay back, he got on top of her.  He kissed her neck and she made sounds of enjoyment.  Suddenly, she said, "[W]e're not [going to] do this," which made him realize that what he was doing was wrong.

Ana, Lilly's mother, testified that Lilly, crying, called her and said that defendant tried to violate her.  She met Lilly and told her that Sharon needed to know.  Together, they went home and told Sharon what happened.  The next day, Lilly, Sharon, and their mother went to the police station.

In the defense case, Sharon testified that her sister told her what happened with defendant.  Defendant testified in keeping with his second interview with the police.

## II. Procedural background.

On August 16, 2012, a jury found defendant guilty of count 1, assault with intent to commit a felony (§ 220, subd. (a)(1)) and of count 2, sexual battery (§ 243.4, subd. (a)).

On September 20, 2012, the trial court sentenced defendant to two years on each of the counts, for a total of four years in prison.

## DISCUSSION

## I. The fresh complaint doctrine.

When Ana testified that Lilly told her defendant tried to rape her, defense counsel asked that the jury be instructed under the fresh complaint doctrine; namely, that the evidence was admissible for a limited purpose.  The trial court refused.  Defendant now claims that his rights to a fair trial and to due process were violated by the alleged error.  We disagree.

### A. *Additional facts.*

Lilly's mother, Ana, testified for the People.  When she was asked on direct examination what Lilly said to her on the day of the incident, defense counsel requested a sidebar:

"[Defense counsel]:  "Your Honor, I think this witness, if I understand, is going to testify about Lilly making a fresh complaint.  In that sense I don't know if we had

anything in the jury instructions to that effect.[3]  I imagine it would be used for that limited purpose and I would ask that the court instruct the jury on that.

"The court:  It's not just that.  It's also prior consistent or inconsistent statement. You have impeached her a couple times.  It's—the testimony is what happened in the case.  I don't think it's there just for a limited purpose.

"[The prosecutor]:  If I can also state it's also corroboration as to her demeanor, given that the defense is trying to impeach her that this was a consent.  So I think it goes to corroborate her demeanor at the time.

"[Defense counsel]:  I'll submit on that."
Ana then testified that Lilly, crying, called her and said that defendant tried to violate her.

Later, the defense called Sharon as a witness and asked, "What part of Lilly's version did you share with [defendant] at that time?"  She answered, "That she was saying that he grabbed her and that it wasn't something that we both—that they both planned.  It was something that he tried to do against her."

During closing arguments, the prosecutor pointed to Lilly's mother's testimony as corroborating evidence:  "She testified that on July 28th, 2011, Lilly called her crying. She told her mom that the defendant tried to rape her and mom told Lilly we need to talk to Sharon."

B.      *Any error in failing to give a limiting instruction was harmless.*

"[U]nder principles generally applicable to the determination of evidentiary relevance and admissibility, proof of an extrajudicial complaint, made by the victim of a sexual offense, disclosing the alleged assault, may be admissible for a limited, nonhearsay purpose—namely, to establish the fact of, and the circumstances surrounding, the victim's disclosure of the assault to others—whenever the fact that the disclosure was made and the circumstances under which it was made are relevant to the trier of fact's determination as to whether the offense occurred."  (*People v. Brown* (1994) 8 Cal.4th 746, 749-750, italics omitted; see also *People v. Manning* (2008) 165 Cal.App.4th 870,

---

[3]      The parties and the trial court had already discussed jury instructions.

880.)  The evidence is admissible only "for the limited purpose of showing that a complaint was made by the victim, and not for the truth of the matter stated.  [Citation.]  Evidence admitted pursuant to this doctrine may be considered by the trier of fact for the purpose of corroborating the victim's testimony, but not to prove the occurrence of the crime.  [Citation.]" (*People v. Ramirez* (2006) 143 Cal.App.4th 1512, 1522.)  Thus, "only the fact that a complaint was made, and the circumstances surrounding its making, ordinarily are admissible; admission of evidence concerning details of the statements themselves, to prove the truth of the matter asserted, would violate the hearsay rule." (*Brown*, at p. 760; see also *id.* at p. 763.)

On request, a trial court must instruct the jury as to the limited purpose for which the fresh complaint evidence was admitted.  (*People v. Brown, supra*, 8 Cal.4th at p. 757.)  Here, when it became clear that Ana was going to testify about Lilly's "fresh complaint," defense counsel asked for a limiting instruction.  While acknowledging counsel's point, the court nonetheless refused to instruct on the limited nature of the evidence because it found that the evidence was also admissible as a prior consistent or inconsistent statement.

We need not address whether the trial court erred, because any error concerning the failure to give a limiting instruction was harmless.  (See *People v. Watson* (1956) 46 Cal.2d 818, 836.)  Lilly testified at trial.  Ana's and Sharon's testimony were merely consistent with and cumulative of Lilly's testimony.  Ana testified, for example, that Lilly called her and said that defendant violated her.  Sharon also testified that Lilly told her that defendant grabbed her, and it was "something that he tried to do against her."  The evidence was therefore merely cumulative, and cumulative statements that repeat facts established by other means are not prejudicial.  (*People v. Blacksher* (2011) 52 Cal.4th 769, 818, fn. 29; see also *People v. Manning, supra,* 165 Cal.App.4th at p. 881 [failure to give limiting instruction is harmless error where victim testified at trial]; *People v. Ramirez, supra,* 143 Cal.App.4th at p. 1526 [admission of hearsay statements is harmless error where declarant testified at trial].)

6

Moreover, the evidence was brief and limited to the fact that Lilly made a complaint to her mother and sister. The jury requested that Lilly's testimony be read to it, which demonstrates that the fresh complaint statements were not the basis of its decision making. We therefore conclude it is not reasonably probable a different outcome would have occurred had the trial court given the jury a limiting instruction for the fresh complaint evidence.

Because we conclude that any error in failing to give a limiting instruction was harmless, defendant's alternative argument that his trial counsel provided ineffective assistance of counsel by failing to renew his request for a limiting instruction similarly fails. As explained above, any error in failing to give a limiting instruction on the permissible use of fresh complaint statements was harmless because it is not reasonably probable defendant would have obtained a more favorable outcome. Accordingly, defendant fails to show the requisite prejudice to support his ineffective assistance of counsel claim. (See generally, *Strickland v. Washington* (1984) 466 U.S. 668, 687; *People v. Ledesma* (2006) 39 Cal.4th 641, 745-746; *People v. Cleveland* (2004) 32 Cal.4th 704, 746.)

## II.    Restitution.

At the sentencing hearing, the trial court ordered defendant to pay a $240 restitution fine under section 1202.4 and a $200 parole restitution fine under section 1202.45.[4] Defendant contends that the $240 fine must be reduced to $200.

At the time defendant committed the crime in 2011, the minimum section 1202.4, subdivision (b), restitution fine was $200. (§ 1202.4, subd. (b)(1) [fine "shall be set at the discretion of the court and commensurate with the seriousness of the offense, but shall not be less than two hundred ($200), and not more than ten thousand dollars ($10,000), if

---

[4]    The minute order and abstract of judgment, however, state that both fines were $240. Neither party addresses the discrepancy between the oral pronouncement and the minute order and abstract of judgment on appeal. "Where there is a discrepancy between the oral pronouncement of judgment and the minute order or the abstract of judgment, the oral pronouncement controls. [Citations.]" (*People v. Zackery* (2007) 147 Cal.App.4th 380, 385.)

the person is convicted of a felony"].) At the time defendant was sentenced in 2012, the minimum fine increased to $240. (§ 1202.4, subd. (b)(1).)

"[T]he imposition of restitution fines constitutes punishment, and therefore is subject to the proscriptions of the ex post facto clause and other constitutional provisions." (*People v. Souza* (2012) 54 Cal.4th 90, 143.) A defendant may challenge a restitution fine imposed under section 1202.4 as violating the ex post facto clauses of the California and federal Constitutions, if the fine is greater than authorized by section 1202.4 at the time he committed his crimes. (*Souza*, at p. 143.)

The People initially argue that because defendant did not object to the fine or raise an ex post facto argument below, the issue is forfeited on appeal. The rule of forfeiture is applicable to ex post facto claims, particularly where the alleged error could easily have been corrected if the issue had been raised at the sentencing hearing. (*People v. Bradley* (2012) 208 Cal.App.4th 64, 90 [defendant failed to object to imposition of a restitution fine of $8,523.37].) We may, however, correct an unauthorized sentence on appeal. (*People v. Scott* (1994) 9 Cal.4th 331, 354.)

The People appear not to deny that if the trial court intended to impose the minimum fines, it erred in applying the $240 minimum instead of the $200 minimum in effect at the time the crime was committed in 2011. The People instead maintain that the $240 fine was well within the range of what the court could impose, namely, between $200 and $10,000. This argument is unpersuasive. Nothing in the record supports the notion that the court intended to impose a fine greater than the minimum by the arbitrary amount of $40. Indeed, the trial court imposed a $200 parole revocation fine under section 1202.45, which could show that the trial court meant to impose the minimum fine under section 1202.4 as well.[5] The overwhelming probability is that the court simply used the new minimum by mistake. This amounted to an inadvertent retroactive application of a new minimum penalty and must be corrected.

---

[5]     The parole revocation fine must be "the same amount as" the restitution fine. (Former § 1202.45.)

## DISPOSITION

The fines under sections 1202.4 and 1202.45 are modified to $200 each. The clerk of the superior court is directed to modify the abstract of judgment and to forward the modified abstract to the Department of Corrections. The judgment is affirmed as modified.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ALDRICH, J.

We concur:

KLEIN, P. J.

CROSKEY, J.

9